**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 22 2019 ★

BROOKLYN OFFICE

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | |
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>PAUL BURNELL,<br><div align="right">Defendant.</div> | 18-CR-315<br><br>Statement of Reasons Pursuant to<br>18 U.S.C. § 3553(c)(2) |

**Jack B. Weinstein, Senior United States District Judge:**

| Parties | Appearances |
|---|---|
| For United States | James P. McDonald<br>Assistant United States Attorney<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201-1820<br>718-254-6376 |
| For Defendant | Kristen Marie Santillo<br>Gelber & Santillo PLLC<br>347 West 36th Street, Suite 805<br>New York, NY 10018<br>212-227-4743 |

## Table of Contents

I. Introduction ............................................................................................................. 1

II. Offense .................................................................................................................. 1

III. Guilty Plea ............................................................................................................ 2

IV. Sentencing Hearing ............................................................................................... 2

V. Offense Level, Category, and Sentencing Guidelines Range ............................... 3

VI. Law ....................................................................................................................... 4

VII. 18 U.S.C. § 3553(a) Considerations ..................................................................... 4

VIII. Sentence ................................................................................................................ 6

IX. Conclusion ............................................................................................................ 7

### I. Introduction

Paul Burnell ("Burnell" or "Defendant") pled guilty to violating 18 U.S.C. §§ 1349 and 1343; conspiracy to commit wire fraud. He, together with others, devised a scheme to defraud export companies purchasing scrap metal for shipment to foreign customers. Compassionate considerations outweigh the need for incarceration in this serious commercial crime.

### II. Offense

From 2015 to 2018, Defendant was self-employed as a consultant and trader in the scrap metal business through Shore Consultants & Trading, LLC. Pre-Sentence Report ("PSR") ¶¶ 54–55. Scrap metal from the United States is sent abroad in shipping containers. PSR ¶ 3. Foreign customers pay a price per unit of weight for scrap metal, separated and charged for by type. *Id.*

During Burnell's time with Shore Consultants, he participated in two frauds. In 2016, the conspirators sold to overseas customers shipping containers of scrap metal that had been padded with cheaper metal. PSR ¶ 4. More valuable scrap metal was placed on top of the cheaper, filler metal to make it appear that the entire container was filled with the valuable scrap metal. *Id.* Defendant provided places to load the shipping containers. PSR ¶ 6.

1

In late 2017 and early 2018, Burnell and a conspirator contracted with a customer to ship $100,000 worth of valuable harness wire to China. PSR ¶ 9. In early 2018, instead of filling a shipping container with harness wire, Burnell, the conspirator, and a third person filled it with cheap rotors, adding a layer of harness wire inside so it appeared that the container was filled with the more valuable scrap. PSR ¶ 12. Defendant was arrested as he and his co-conspirators were waiting for a truck to move the container. *Id.* This was a "sting" operation. PSR ¶ 13.

### III. Guilty Plea

Defendant pled guilty on July 10, 2018, to conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343. Minute Entry, July 10, 2018, ECF No. 25; PSR ¶ 1. He is being prosecuted for the 2017–2018 fraud only, though the 2016 fraud is relevant to the sentence.

### IV. Sentencing Hearing

The court held sentencing hearings on January 30, 2019 and January 31, 2019. *See* Minute Entry, Jan. 30, 2019, ECF No. 35; Minute Entry, Jan. 31, 2019, ECF No. 36. A guilty plea was accepted by the magistrate judge and again by the court. Hr'g Tr. 11:8–12:1, Jan. 30, 2019.

The proceedings were videotaped to develop a record of courtroom atmosphere. *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) ("The sentencing hearing normally requires that the defendant be observed for credibility, mental astuteness, physical characteristics, ability to withstand the rigors and dangers of incarceration, and . . . myriad other relevant factors. In many instances, it is necessary to observe the employer's and familial ties to the defendant. A judge applies mental impressions of many tangible and intangible factors when imposing a sentence."). At the hearing, Burnell had the support of more than a half-dozen family members and friends, including his wife, his mother, and his sister. His role as an emotional and

financial support to his family was evident in observing the attendees, as was the commitment his family members and friends have to supporting him following his conviction.

## V. Offense Level, Category, and Sentencing Guidelines Range

The base offense level for conspiracy to commit wire fraud, 18 U.S.C. § 1349, is seven. U.S.S.G. § 2B1.1(a)(1). This is subject to an increase of eight because the loss involved in this offense was greater than $95,000. *Id.* § 2B1.1(b)(1). The offense level was reduced by two points for acceptance of responsibility. PSR ¶ 25. The total adjusted offense level is 13. Hr'g Tr. 27:11, Jan. 31, 2019.

The parties disagreed about the loss amount. The government contended that the loss amount was more than $95,000, because the defendant intended to ship two containers of harness wire each with a value of approximately $50,000. *See* Sent'g Mem. 6, Jan. 28, 2019, ECF No. 33. This conclusion was supported by Burnell's own statements on audio recordings. *Id.* at 6–7. Defendant contended that the loss amount was less than $95,000 because the cost of materials shipped must be taken into account when calculating the loss and, even if not taken into account, the defrauded recipients of the containers received some material of value. Sent'g Mem. Behalf Paul Burnell 13. The government's contention was accurate. The relevant loss is the "intended loss"—the pecuniary harm that the offense would have inflicted. U.S.S.G. § 2B1.1 n.3(A)(ii). In addition to the approximately $100,000 Burnell and his co-conspirator would receive had the scheme been successful, there is also the pecuniary loss that would have been incurred to customs officials and the recipients of the products as a result of having to sort through the padding material. *See* Hr'g Tr. 24:6–19; 25:23–25, Jan. 31, 2019. Thus the loss amount was greater than $95,000.

Burnell has no prior criminal convictions. PSR ¶ 30. His criminal history category is I. *Id.* The imprisonment range under the Sentencing Guidelines is 12 to 18 months. Hr'g Tr. 27:16–20, Jan. 31, 2019.

## VI. Law

The United States Sentencing Guidelines are advisory. *United States v. Booker*, 543 U.S. 220 (2005). "A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines serve as a lodestar for determining the sentence from which a district court may depart when it "consider[s] all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50.

## VII. 18 U.S.C. § 3553(a) Considerations

A sentence must "consider all of the § 3553(a) factors . . . [and] make an individualized assessment based on the facts presented." *Id.*; *see also* 18 U.S.C. § 3553(a)(1) (factors include the "nature and circumstances of the offense and the history and characteristics of the defendant").

Defendant is a 42-year-old United States citizen. PSR at 2. His parents separated when he was an infant, and he was raised by his mother. PSR ¶ 37. For the first nine years of his life he lived with his mother and maternal grandparents. *Id.* Thereafter, he lived with his mother, stepfather, and maternal half-sister until he began residing with his wife in 1998. PSR ¶¶ 37, 39. His mother, sister, and wife are aware of his crimes; they are supportive of Burnell. PSR ¶¶ 36, 38–39. They, in addition to other family members and friends, were in attendance at the sentencing hearing.

Burnell and his wife have two daughters, ages 14 and 11. PSR ¶ 39. The children are not aware of his indictment and plea. *Id.*

Defendant received his high school diploma in 1993 and attended Brookdale Community College in New Jersey for two semesters without obtaining a degree. PSR ¶ 48. From 1995 to 2003, he worked as a telemarketer. PSR ¶ 62. Defendant also worked as a part-time reserve policer officer from 1995 to 1997. *Id.* Beginning in 2004, Burnell managed a business involved in scrap metal sales that was owned by his father-in-law. PSR ¶¶ 60–61. He left this company in 2009 to begin his own business trading in automobile transmissions and engines. PSR ¶¶ 56–60. He operated this business with a partner for three years before establishing his own business. PSR ¶¶ 55–59. In 2015, Defendant operated a scrap metal consulting and trading business. PSR ¶¶ 54–55. He ran this business until 2018; it is through this company that he committed the instant offense. PSR ¶ 55. Burnell currently works grading and sorting auto parts and as a real estate agent. PSR ¶¶ 52–53. At the time of the hearing, he had about $6,000 in liquid assets. Hr'g Tr. 28:3–14, Jan. 31, 2019.

Defendant has been diagnosed as having Bipolar II Disorder, with stages of mania and depression. PSR ¶ 44. He attends weekly therapy sessions and takes medication. *Id.* He has suffered from the symptoms of this disorder for many years, but it was only recently diagnosed. *Id.* His wife reports that she has seen a significant improvement in Burnell's mood since he began attending therapy sessions and taking medication. PSR ¶ 45. She is "grateful" for the circumstances resulting from the instant offense because Burnell received the help he needed. *Id.*

Burnell's family and friends have perceived his closeness to his two daughters and his importance in their lives. *See* Sent'g Mem. Behalf Paul Burnell Ex. A. Both daughters are

5

psychologically fragile; one suffers from severe anxiety and trichotillomania, and the other from attention deficit disorder. *Id.* at 5. Defendant is active in their upbringing. Hr'g Tr. 29:22–25, 34:19–35:3, Jan. 31, 2019. He spends most of his free time with his family. *Id.*

## VIII.  Sentence

In imposing a sentence, the court must consider the nature of the crime and the impact the sentence may have on dependents as well as the defendant himself. *See United States v. Bannister*, 786 F. Supp. 2d 617, 653 (E.D.N.Y. 2011) ("Incarceration affects the lives not only of prisoners but of those around them. Families of prisoners face higher rates of divorce, separation, domestic violence, and developmental and behavioral problems among children than the families of non-prisoners.").

Burnell is now being treated for what appears to have been longstanding—but unrecognized—mental health problems. He is no longer operating the business involved in the instant offense. His family and friends are aware of his conviction and appear committed to helping him avoid further trouble with the law. He presents a low risk of recidivism.

Incarceration would be damaging to his family. His children require special care. He has always been his immediate family's primary breadwinner.

Three years of probation are subject to the usual conditions proposed by the United States Probation Department, except that he will not be required to "refrain from engaging in negotiating or facilitating the overseas sales of scrap metal." Hr'g Tr. Ex. 2 ¶ 2, Jan. 31, 2019. This condition might prevent him from earning a living. He is required to pay a $15,000 fine, $5,000 payable on March 1 and the remainder payable as 10% of his net income on the first day of each month thereafter. A $100 special assessment is imposed.

The court considered general and specific deterrence in this case. It is important that American scrap metal dealers are able to ship their product abroad without suspicion that they are committing fraud in their business dealings. The fine and term of probation will serve as deterrence to others. They will also deter Defendant and ensure that he addresses the mental health and other issues leading to the instant offense.

## IX.  Conclusion

The Guidelines have been considered and the sentence granted to ensure it is "sufficient, but not greater than necessary" under 18 U.S.C. 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:  February 21, 2019
Brooklyn, New York